IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

DENISE ROSANE MARTINS BEZ, et al.

:

v.                        : Civil Action No. DKC 24-2827

:

MARRIOTT INTERNATIONAL, INC.,
et al.                    :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this negligence case is the motion to dismiss for *forum non conveniens* filed by Defendants Marriott International, Inc. ("Marriott International") and Marriott International Hotels, Inc. ("Marriott International Hotels," and collectively, "Moving Defendants"). (ECF No. 7). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

## I.  Background

Denise Rosane Martins Bez and Elizabeth Martins Olivo ("Plaintiffs") are residents of Brazil. (ECF No. 1 ¶¶ 1-2). In November 2022, Plaintiffs traveled to Cairo, Egypt for a vacation, and Plaintiffs stayed at the Marriott Mena House, Cairo (the "Hotel"). (*Id.* ¶¶ 13-14). On November 25, 2022, Plaintiffs were walking under an archway in the Hotel, and the archway collapsed

on Plaintiffs, "causing severe mental and permanent physical injuries." (*Id.* ¶ 16).

According to Plaintiffs, the Hotel, Luxury Hotels International Management Company B.V. ("Luxury Hotels"), and Marriott Hotels International B.V. ("Marriott Hotels International," collectively, "Non-moving Defendants," and together with Moving Defendants, "Defendants") are Egyptian companies owned and controlled by Moving Defendants. (*Id.* ¶¶ 5-7). Plaintiffs allege upon information and belief that Defendants contracted with Super Sport Company, an Egyptian Company, to build an archway in the Hotel for the Stad El-Arab World Cup Tournament. (*Id.* ¶¶ 8, 15).

In their opposition to Moving Defendants' motion to dismiss, Plaintiffs provided the Marriott Fact Book that states that Marriott International owns thousands of properties across the world. (ECF No. 14-2). Plaintiffs also provided screenshots from the Marriott.com website showing the Hotel listed as one of the hotels in Cairo. (ECF No. 14-3, at 1). It is not clear from the screenshot which entity owns the website, but Plaintiffs contend that it is an international website of Moving Defendants. (ECF No. 14-1, at 4). Plaintiffs also include a news article from 2015 stating that Marriott International is the largest operator of hotels in Africa, (ECF No. 14-4), an article from Marriott

2

International's News Center announcing the rebranding of the Hotel as the Marriott Mena House, Cairo, (ECF No. 14-5, at 1), and an article from TTG Mena Online from 2015 reporting that Marriott International signed a letter of intent to manage the Hotel. (ECF No. 14-6, at 1). Plaintiffs provided a United States Securities and Exchange Commission ("SEC") filing from Marriott International that lists Luxury Hotels International Management Company B.V. as a subsidiary, (ECF No. 14-7, at 21), and an insurance policy that names Moving Defendants as a named insured for the Stad El-Arab World Cup Tournament at the Hotel. (ECF No. 14-8, at 1).

In a sworn affidavit by the "Vice President and Assistant General Counsel, Operations and Asset Management," Moving Defendants assert that they do not own the Hotel, and they do not operate or manage the day-to-day operations of the Hotel. (ECF Nos. 7-1, at 8; 7-5, at 2-3; 7-6, at 2-3). Moving Defendants assert that the Hotel is owned by The Egyptian General Company for Tourism and Hotels, ("EGOTH"), an Egyptian public joint stock company. (ECF No. 7-1, at 8). According to Moving Defendants, "EGOTH is a distinct entity and has no affiliation with Moving Defendants." (*Id.*). Moving Defendants also declare upon information and belief that Luxury Hotels, a Netherlands company,

operates and manages the Hotel.[1]  (*Id.;* ECF No. 7-7, at 3).  Moving Defendants are headquartered in Maryland.  (ECF No. 7-1, at 19).

On October 1, 2024, Plaintiffs filed suit in this court against Moving Defendants, as well as Marriott Mena House, Cairo, Luxury Hotels International Management Company B.V., and Marriott Hotels International B.V., for negligence.  (ECF No. 1). Plaintiffs assert diversity jurisdiction.  (*Id.* ¶ 10).  On November 12, 2024, Moving Defendants filed a motion to dismiss for *forum non conveniens*.  (ECF No. 7).  On January 17, 2025, Plaintiffs filed a response in opposition.  (ECF No. 14).  On February 14, 2025, Moving Defendants filed a reply in support of their motion to dismiss.  (ECF No. 17).  On June 27, 2025, the court granted Plaintiffs' motion for extension of time to serve Defendants Marriott Mena, Cairo, Luxury Hotels International Management Company B.V., and Marriott Hotels International B.V.  (ECF No. 21).  To date, those Defendants have not been served.

---

[1] According to Plaintiffs, the three Non-moving Defendants are all Egyptian companies owned and controlled by Moving Defendants.  (ECF No. 1 ¶¶ 5-7).  In contrast, Moving Defendants contend that the Hotel is owned by EGOTH, an Egyptian company (ECF No. 7-1, at 8), and Luxury Hotels is a Netherlands company registered to do business in Egypt.  (*Id.* at 5-6).  Moving Defendants do not identify Marriott Hotels International B.V. in their motion to dismiss or their reply.  Plaintiffs' SEC exhibit listing of Marriott International, Inc.'s subsidiaries identifies Marriott Hotels International B.V. as a subsidiary incorporated in the Netherlands.  (ECF No. 14-7, at 33).  Thus, neither party seems to assert that any of the Non-moving Defendants are citizens of the United States.

## II.  Standard of Review

In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947), the Supreme Court of the United States explained that "[t]he principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."  In reaffirming and restating the doctrine, which is now largely limited to cases in which the alternative forum is outside the United States, the Court has instructed that it applies "where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981).  The defendant "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," but where, as here, the plaintiff brings suit outside its home forum, "the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quoting *Piper Aircraft Co.*, 454 U.S. at 255–56).

"At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Piper Aircraft Co.*, 454 U.S. at 254 n.22.  The defendant bears the burden

of establishing that the alternative forum is available to all parties and that an adequate remedy is available to the plaintiff.

If an available and adequate alternative forum is found to exist, the defendant must then establish that certain private and public interest factors militate in favor of dismissal, principally those identified by the Supreme Court in *Gulf Oil Corp.*, 330 U.S. at 508–09.  At this stage of the analysis, the court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe v. Baird*, 486 U.S. 517, 528 (1988).  This inquiry "does not necessarily require extensive investigation," however, and "may be resolved on affidavits presented by the parties." *Id.* at 529.  As the Supreme Court has repeatedly counseled, courts must "retain flexibility" in balancing the private and public interests at stake, as "'[e]ach case turns on its facts.'"  *Piper Aircraft Co.*, 454 U.S. at 249 (quoting *Williams v. Green Bay & Western R. Co.*, 326 U.S. 549, 557 (1946)).

The determination to dismiss a case on *forum non conveniens* grounds rests in the sound discretion of the district court. *See*

*Id.* at 257; *see also Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 314 (4th Cir. 1984).

## III. Analysis

Moving Defendants argue that Plaintiffs' complaint should be dismissed for *forum non conveniens* because the "case has no nexus to the United States," Egypt is an available and adequate forum, and the private and public interests favor litigation in Egypt. (ECF No. 7-1, at 5-6). Plaintiffs argue that there is a connection to the United States, Moving Defendants have not met their burden to show that Egypt is an available and adequate forum, and the balance of private and public interests weigh in favor of litigating in the United States. (ECF No. 14-1).

### A.    Availability and Adequacy of the Alternative Forum

### 1.    Availability

Ordinarily, a defendant can satisfy the availability element by showing that it is "amenable to process" in the alternative forum. *Piper Aircraft Co.*, 454 U.S. at 254 n.22 (citation modified). Moving Defendants indicate they are amenable to process in Egypt, and Plaintiffs do not allege that Moving Defendants are not amenable to process in Egypt.[2]

---

[2] It is unclear where Moving Defendants initially make this assertion. In their opposition, Plaintiffs state that "even though the Marriott Defendants propose Cairo, Egypt as an available forum, and are amen[]able to process in that jurisdiction . . . ." (ECF No. 14-1, at 8). In their reply, Moving Defendants acknowledge

"In *Kontoulas,* 745 F.2d at 316, the United States Court of Appeals for the Fourth Circuit held that expiration of the statute of limitations in the alternative forum may render the alternative forum unavailable." *Tang v. Synutra Int'l, Inc.*, No. 09-CV-0088-DKC, 2010 WL 1375373, at *6 (D.Md. Mar. 29, 2010), *aff'd sub nom. Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242 (4th Cir. 2011). Moving Defendants have agreed to extend the statute of limitations by three years. (ECF No. 7-1, at 12). Plaintiffs do not challenge Moving Defendants' assertion.[3] (ECF No. 14-1, at 7).

Plaintiffs, however, argue that the court "should closely consider . . . weighing against dismissal" because Maryland is the Moving Defendants' principal place of business. (*Id.* at 7-8). Plaintiffs cite cases from the Fourth Circuit and the District of Maryland in support of their argument. Those cases, however,

---

their amenability to service of process in Egypt by stating that "Plaintiffs admit that Moving Defendants are amenable to process in Egypt and have agreed to extend the statute of limitations . . . ." (ECF No. 17, at 7-8).

[3] Neither party raises the issue of any potential impact the statute of limitations may have on Non-moving Defendants. Moving Defendants assert through Tarek Ezzo's declaration that, in Egypt, the statute of limitations expires three years from the date Plaintiffs became aware of their injuries. (ECF Nos. 7-1, at 12, 7-8, at 6). Plaintiffs have alleged that they were injured on November 25, 2022. (ECF No. 1 ¶ 16). Therefore, even without Non-moving Defendants' agreement to extend the statute of limitation, the statute of limitations does not expire until November 25, 2025, allowing Plaintiffs to bring suit against all Defendants for another few months.

analyzed the defendant's place of residence as part of the balance of public and private factors. *See Sund v. Marriott Int'l, Inc.*, No. 19-CV-2806-TDC, 2020 WL 2085469, at *4 (D.Md. Apr. 30, 2020) (stating that in the context of balancing the private and public interests, when the defendant is a resident of the plaintiff's chosen forum, the court should "closely consider that fact as weighing against dismissal"); *Galustian v. Peter*, 591 F.3d 724, 732 (4th Cir. 2010) (discussing in the context of considering the public and private factors that the district court should have "examined . . . more closely" the fact that the defendant was a resident of the plaintiff's chosen forum); *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013) (finding in its review of the district court's balancing of the public and private factors "that a defendant's residence deserves consideration in a *forum non conveniens* analysis"). Therefore, Moving Defendants' residence will be analyzed as part of the balance of public and private factors below, and the availability requirement is satisfied.

### 2. Adequacy

Moving Defendants argue that Egypt is an adequate forum because "Plaintiffs have a viable cause of action under Egyptian law." (ECF No. 7-1, at 12). Moving Defendants included a declaration from Tarek Ezzo ("Mr. Ezzo"), a "decorated and

experienced" Egyptian lawyer, stating that although Plaintiffs are Brazilian, Egyptian law allows non-Egyptians to bring an action against Egyptian and non-Egyptian entities. (ECF Nos. 7-1, at 12; 7-8, at 3-4; 17, at 8). Mr. Ezzo also asserts that the Egyptian courts would have jurisdiction over all Defendants, both Egyptian and non-Egyptian. (ECF Nos. 7-1, at 12-13; 7-8, at 4). Additionally, Mr. Ezzo states that he believes "there are no circumstances of any kind in Egypt which would prevent the [c]ourts from being fully operational." (ECF No. 7-8, at 6). He also asserts "there is no reason to suggest that Plaintiffs' claims would not proceed expeditiously" in Egyptian courts. (ECF Nos. 7-1, at 13; 7-8, at 6-7).

Plaintiffs argue that Egypt is not an adequate forum because of its "judicial system's inefficiencies" and "corruption." (ECF No. 14-1, at 9). Plaintiffs do not offer any competing declarations, instead they rely on the United States Department of State Country Report on Human Rights Practices to describe the "[l]egal and societal barriers" that "disadvantage women in various aspects of life." (*Id.*). Plaintiffs also cite to a report from a think tank reporting that women make up a very small percentage of Egyptian judges. (*Id.* at 10). Plaintiffs contend that they have "virtually no chance of receiving a fair trial" in Egypt, because if Egyptian women face discrimination, non-Egyptian

10

women will be at an even greater disadvantage. (*Id.*). Plaintiffs also argue that they are opposing a "multinational hotel and resort corporation" that brings economic benefits to Egypt, "further diminish[ing] the likelihood of a favorable or unbiased adjudication for Plaintiffs." (*Id.*). Lastly, Plaintiffs state that all court proceedings and testimony will need to be in Arabic, which will pose "a significant barrier to Plaintiffs seeking justice in Egypt." (*Id.*).

Moving Defendants respond with a second declaration from Mr. Ezzo, reiterating that there are no excessive delays or barriers to noncitizens in the Egyptian courts. (ECF Nos. 17, at 9-10; 17-1, at 3). Mr. Ezzo further asserts that based on his experience, there is no reason Plaintiffs' gender would impair their ability to pursue their claims or receive a fair trial. (ECF Nos. 17, at 11; 17-1, at 3). Moving Defendants also argue that Plaintiffs have not cited any evidence relevant to this case, and even if the women encounter obstacles in various areas, Plaintiffs have not cited to any authority that would show these obstacles would be relevant in a negligence case. (ECF No. 17, at 10-11). Lastly, Moving Defendants assert that the forum need not be the best forum, just an adequate one, and they have shown that Egypt is an adequate forum. (*Id.* at 11).

> A foreign forum is considered adequate when
> "(1) all parties can come within that forum's

> jurisdiction, and (2) the parties will not be
> deprived of all remedies or treated unfairly,
> even though they may not enjoy the same
> benefits as they might receive in an American
> court." *Jiali Tang*, 656 F.3d at 249 (quoting
> *Fid. Bank PLC v. N. Fox Shipping N.V.*, 242 F.
> App'x 84, 90 (4th Cir. 2007)).

*Sund*, 2020 WL 2085469, at *2.

Moving Defendants have offered evidence through Mr. Ezzo's declarations that Egypt would be able to assert jurisdiction over all Defendants.  Plaintiffs do not dispute this assertion.

As stated above, for a foreign forum to be deemed adequate, the defendant must show that "*all* parties can come within that forum's jurisdiction."  *Jiali Tang*, 656 F.3d at 249 (citation modified).  Several courts have addressed this issue where some defendants moved to dismiss a complaint for *forum non conveniens*, and some defendants did not.  In *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F.Supp.2d 240 (D.D.C. 2011), the plaintiffs brought suit against multiple defendants, and some of the defendants moved to dismiss for lack of personal jurisdiction and *forum non conveniens*.  The United States District Court for the District of Columbia found that "there is wide-ranging consensus among the various Circuits that a dismissal based on *forum non conveniens* requires that the alternate forum have jurisdiction over all of the moving party's co-defendants."  *Id.* at 291-92 (collecting cases) (citation modified).  The court found that

12

because the moving defendants had not shown that the foreign court would have jurisdiction over the non-moving defendants, or that the non-moving defendants consented to the jurisdiction of the foreign court, the foreign court would not be considered an adequate alternative forum. *Id.* at 292.

In another case from the District of Columbia, the plaintiff sued multiple defendants, with the first defendant allegedly owning the second defendant, who allegedly owned the third. *BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F.Supp.2d 73, 78 (D.D.C. 2003). Two of the three defendants moved to dismiss for *forum non conveniens*, among other reasons. The third defendant had not been served, and the court ordered the plaintiffs to show cause as to why the court should not dismiss the action as to that defendant. *Id.* at n.1. One of the moving defendants averred that the plaintiffs could assert their claims in Sweden, and that "each of the defendants are subject to the jurisdiction of the appropriate Swedish courts." *Id.* at 85 (citation modified). The plaintiffs did not address this issue in its oppositions, and the court found that the moving defendants met their burden to show an adequate alternative forum. *Id.*

In *Activision Publishing, Inc. v. EngineOwning UG*, No. CV 22-0051, 2023 WL 3272399, at *18-20 (C.D. Cal. Apr. 4, 2023), the district court in California found that when only some of the

13

defendants move to dismiss for *forum non conveniens*, the moving defendants must show that the foreign court would have jurisdiction over all of the defendants for the forum to be considered adequate. Because the moving defendants had not shown that the non-moving defendants would be subject to jurisdiction in the foreign court, dismissal for *forum non conveniens* was not appropriate. *Id.* at *18.

Similarly, in *Rudersdal, EEOD v. Harris*, No. 1:18-CV-11072, 2020 WL 5836517, at *11 (S.D.N.Y. Sept. 30, 2020), the district court in New York adopted the report and recommendation of a magistrate judge and found that the foreign court must have jurisdiction over both the moving and non-moving defendants. The parties disputed whether the foreign court would have jurisdiction over the non-moving defendants, and the court resolved the issue by conditioning dismissal on all of the defendants consenting to jurisdiction in the foreign court, as well as waiving any statute of limitations defenses that arose since the action was started, and the foreign court accepting jurisdiction over the case. *Id.* at *11-12, 14.

As stated above, Moving Defendants have included a declaration from Mr. Ezzo attesting that an Egyptian court would have jurisdiction over all of the Defendants, whether Egyptian or foreign. (ECF Nos. 7-1, at 12-13; 7-8, at 3-5). Plaintiffs have

14

not disputed that an Egyptian court would have jurisdiction over the Moving Defendants or the Non-moving Defendants. Moreover, as mentioned above, Plaintiffs themselves assert that all three Non-moving Defendants are Egyptian companies. (ECF No. 1 ¶¶ 5-7). Therefore, Moving Defendants have met the first part of their burden to show that Egypt is an adequate alternative forum for all of the Defendants.

As to the second requirement, "[i]t is only in 'rare circumstances' that a remedy offered by an alternative forum will be deemed 'clearly unsatisfactory such that the alternative forum will be deemed inadequate. *Sund*, 2020 WL 2085469, at *2 (quoting *Jiali Tang*, 656 F.3d at 249).

> While courts have strictly required defendants to demonstrate that the alternative forum offers "at least some relief," they "have not always required that defendants do much to refute allegations of partiality and inefficiency in the alternative forum." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). Many courts have presumed the adequacy of the alternative forum and placed at least the burden of production on the plaintiff to establish otherwise. *See Leon*, 251 F.3d at 1312; *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 393-94 (5th Cir. 1983), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987)). These courts, moreover, have rejected generalized and conclusory allegations by plaintiffs as being insufficient to carry this burden, requiring instead that an evidentiary showing be made in support of claims that the alternative forum is inadequate. *See El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 678

(D.C.Cir. 1996); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1351 (1st Cir. 1992), *cert. denied*, 508 U.S. 912 (1993).   As the United States Court of Appeals for the Eleventh Circuit explained in *Leon*, "defendants have the ultimate burden of persuasion, but only where the plaintiff has substantiated his allegations of serious corruption or delay." 251 F.3d at 1312.

Regardless of the allocation of burden, courts generally agree that "only the most perilous obstacles to conducting litigation, evidenced by a complete absence of due process in the alternative forum, will render [the alternative] forum inadequate." *Gonzalez v. P.T. Pelangi Niagra Mitra Int'l*, 196 F.Supp.2d 482, 486 (S.D.Tex. 2002); *see also Rasoulzadeh v. Associated Press*, 574 F.Supp. 854, 861 (S.D.N.Y. 1983) (denying a motion to dismiss for *forum non conveniens* where plaintiffs would likely be shot if they pursued their claim in Iran), *aff'd*, 767 F.2d 908 (2nd Cir. 1985) (unpublished).   So long as the alternative forum "offers a remedy and process for resolving the dispute," it will be deemed adequate. *Compania Naviera Joanna, SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 204 (4th Cir. 2009).

*Tang*, 2010 WL 1375373, at *4.

Mr. Ezzo has declared that Plaintiffs would have a cause of action under Egyptian law, and Plaintiffs would not be treated unfairly.   Although Plaintiffs allege that they would be treated unfairly as women and as foreigners, Mr. Ezzo's declarations assert that this is not the case, and Plaintiffs have not presented any competing declarations to the contrary.   Additionally, Plaintiffs have not pointed to specific evidence as to how any perceived

injustices in broader Egyptian society would create a "most perilous obstacle[] to conducting litigation." *Tang*, 2010 WL 1375373, at *4 (quoting *Gonzalez*, 196 F.Supp.2d at 486). Plaintiffs have not refuted Moving Defendants' evidence that Egypt "offers a remedy and process for resolving the dispute." *Id.* (quoting *Compania Naviera Joanna, SA*, 569 F.3d at 204). Accordingly, Moving Defendants have met their burden of showing that Egypt is an adequate forum.

**B.    Balance of Private and Public Interests**

Having determined that Egypt is both an available and adequate forum, the court must analyze the relevant private and public interest factors. "In this analysis, the defendant bears the burden of showing not only that the forum chosen by the plaintiff is not the best forum, but also that another forum is more appropriate." *Tang*, 2010 WL 1375373, at *12 (citing *Kontoulas*, 745 F.2d at 315).

**1.    Connection to the United States, Plaintiffs' Choice of Forum, and Moving Defendants' Residence**

The parties dispute whether there is a connection to the United States. Additionally, as discussed above, a plaintiff's choice of forum and a defendant's place of residence are relevant to the overall balance of factors analysis.

17

### a.  Connection to the United States

Moving Defendants argue that there is no connection to the United States because:

> Plaintiffs claim they were injured in Egypt . . . The owner of the Hotel is an Egyptian company with no connections to the United States; the entity that runs the day-to-day operations of the Hotel is a Dutch company with no connections to the United States; and Super Sport, the entity responsible for building the archway allegedly causing Brazilian Plaintiffs' injuries, is an Egyptian company with no connections to the United States. Moving Defendants were incorrectly named.

(ECF No. 7-1, at 11).

Plaintiffs argue there is a nexus to the United States because Moving Defendants' website and news articles state that they own and manage the Hotel. (ECF Nos. 14-1, at 7; 14-2; 14-3; 14-4; 14-5; 14-6). Additionally, Moving Defendants are a named insured on an insurance policy for the Stad El-Arab World Cup Tournament at the Hotel, and the policy includes the United States as a potential jurisdiction. (ECF Nos. 14-1, at 7; 14-8, at 1).

Moving Defendants argue that Plaintiffs' news article exhibit discussing Marriott International's plans to manage the Hotel is "inaccurate hearsay," and Moving Defendants have already declared in a sworn affidavit that neither Moving Defendant "manages, controls the operations of, or hires the employees who work at the Hotel." (ECF No. 17, at 16-17). In a footnote, Moving Defendants

18

state that "the mere fact that Luxury Hotels is a subsidiary of [Marriott International], which Plaintiffs mention in passing but do not explain how this would mandate litigation in Maryland, does not establish a connection to Maryland either." (*Id.* at 17 n.6)

While the parties may dispute Moving Defendants' connection to the Hotel, as discussed below, it is not disputed that Moving Defendants are headquartered in Maryland.  The parties also argue what impact Moving Defendants' connection to the United States should have on the *forum non conveniens* analysis.  As will be discussed below, upon consideration of the balance of private and public interest factors below to determine convenience, the factors weigh in favor of dismissal.

**b.  Plaintiffs' Choice of Forum and Moving Defendants' Residence**

Moving Defendants also argue that the court should give little to no weight to Plaintiffs' forum choice because they are not United States citizens.  (ECF No. 7-1, at 10-11).

Plaintiffs argue that the court "should closely consider . . . weighing against dismissal" because Moving Defendants are claiming that Egypt is more convenient than Maryland, their own principal place of business.  (ECF No. 14-1, at 7-8).  Plaintiffs cite to three cases in support of their argument that the court should weigh Plaintiffs' choice of forum

in Plaintiffs' favor because Plaintiffs' choice of forum is Moving Defendants' home forum.

Two of the three cases are distinguishable because the plaintiffs brought suit in their home forums. In *Sund*, Judge Chuang found that the plaintiff's choice of forum was "entitled to the highest level of deference" because the plaintiff filed suit in his home forum, and the forum was also the home forum of the defendant. 2020 WL 2085469, at *5. Additionally, in *DiFederico*, the Fourth Circuit found that the district court abused its discretion by failing to apply increased deference to the plaintiffs' choice of their home forum, and also found that the district court erred in not considering that the forum was the defendant's home forum. 714 F.3d at 803, 807.

Maryland is not Plaintiffs' home forum; accordingly, Plaintiffs are not entitled to this heightened level of deference. Plaintiffs also cite to *Galustian*, a case where the forum was not the plaintiff's home, but it was the defendant's home forum. 591 F.3d 724. The Fourth Circuit wrote:

> [T]he district court's consideration of the public and private factors . . . should have given closer scrutiny to the location of the defendant's residence.[1] It is true that in cases where the plaintiff has not chosen to bring the case in his home country, the court need give little deference to the plaintiff's choice of forum. *Piper Aircraft*, 454 U.S. at 255–56, 102 S.Ct. 252. This lack of deference is muted, however, when the defendant is a

> resident and citizen of the forum he seeks to
> have declared inconvenient for litigation, as
> [the defendant] is here. While we do not
> suggest that [the defendant's] place of
> residence is dispositive, the district court
> should have examined this fact more closely in
> its *forum non conveniens* analysis when "the
> central focus of the *forum non
> conveniens* inquiry is convenience." *Piper
> Aircraft*, 454 U.S. at 249, 102 S.Ct. 252.

*Galustian*, 591 F.3d at 732.

Other cases show that even when the plaintiff's choice of forum is the defendant's home forum, this factor is not necessarily significant in the *forum non conveniens* analysis. This court addressed a similar situation in *Tang*. In *Tang*, a group of Chinese residents brought suit against a parent company of a subsidiary that owned Chinese subsidiaries that had produced contaminated milk products. 2010 WL 1375373, at *1. The defendant moved to dismiss for *forum non conveniens*. The principal place of business of the defendant and the first subsidiary was Maryland. *Id.* In granting the motion to dismiss for *forum non conveniens*, this court first found that China was both an available and adequate alternative forum. *Id.* at *6, *10. In analyzing the private and public interests, the court did not focus its analysis on Maryland as the defendant's home forum. The court found that the plaintiff's choice of forum was "entitled to little deference" because the plaintiffs were citizens and residents of China who had sued "for damages incurred in that country allegedly resulting

21

from defective products produced, marketed, and sold there." *Id.*
at *12. This court further found that because "the private and
public interest factors here overwhelmingly favor dismissal,
however, the deference accorded Plaintiffs' choice of forum is of
no real consequence." *Id.*

On appeal, the Fourth Circuit affirmed. *Jiali Tang*, 656 F.3d
242. The Fourth Circuit found that the district court
appropriately determined that China was an available and adequate
forum. *Id.* at 250-51. The Fourth Circuit also found that the
district court properly weighed the relevant public and private
interest factors. *Id.* at 252-53. Like the district court, the
Fourth Circuit did not emphasize that Maryland was the defendant's
home forum. The Fourth Circuit instead stated that the
"[p]laintiffs' choice to sue in the District of Maryland receives
little deference because they are all Chinese citizens and
residents." *Id.* (citing *Piper Aircraft,* 454 U.S. at 256).

Similar to the facts in *Tang*, Plaintiffs are citizens of
another country, and their alleged injuries all took place outside
of the United States. Additionally, while the parties dispute the
extent of Moving Defendants' ownership and involvement in the
Hotel, it is not disputed that Moving Defendants are headquartered
in Maryland. Nevertheless, as the court in *Galustian* recognized,
Defendant's place of residence is not dispositive, and upon

22

consideration of the balance of private and public interest factors below to determine convenience, the factors weigh in favor of dismissal.

### 2. Private Interests

Moving Defendants argue that the convenience of the witnesses favor dismissal. Moving Defendants assert that employees or contractors of Super Sport who were involved in building and installing the arch, hotel staff who witnessed the accident, and Egyptian law enforcement and others who helped after the accident are all located in Egypt and are critical to the defense. (ECF No. 7-1, at 14-15). Additionally, these witnesses are outside of this court's subpoena power. (*Id.* at 15). Moving Defendants argue that because Plaintiffs allege that Moving Defendants failed to maintain the Hotel and keep it safe, an inspection of the Hotel is appropriate. (*Id.*). Moving Defendants also assert that all of the physical evidence in the case, including the premises itself, the archway, and other records and documents, are not located in the United States, and are presumably located in Egypt. (*Id.* at 15-16). Lastly, Moving Defendants argue that their inability to implead EGOTH or Super Sport as third-party defendants would hinder their ability to defend themselves properly and should weigh in favor of dismissing the complaint. (ECF Nos. 7-1, at 17; 17, at 14-15).

Plaintiffs argue that because they allege that Moving Defendants failed to maintain the archway, identify hazardous conditions, warn Plaintiffs, and use ordinary care, there are sources of evidence located in Maryland, such as Moving Defendants' policies and procedures, training, and inspection guidelines. (ECF No. 14-1, at 12). Plaintiffs also argue that "[t]he likely location of a majority of the documents Plaintiffs would need in discovery are located at the global headquarters of [Moving] Defendants" in Maryland, and the documents would need to be translated to Arabic if the case was brought in Egypt. (*Id.*). Plaintiffs also argue that only one of Moving Defendants' witnesses saw the accident, and any witnesses located in Egypt could be accessed through remote depositions and remote trial testimony.[4] (*Id.* at 13). Additionally, Plaintiffs argue that Plaintiffs chose to sue Moving Defendants and not Super Sport, and the case is about Moving Defendants' negligence. (*Id.*) Plaintiffs also argue that the lack of compulsory process should be given little weight because Moving Defendants have not identified any witness that is unwilling to testify in Maryland. (*Id.*)

---

[4] Plaintiffs cite to *Gallagher v. Marriott Int'l Inc.,* No. 8:19-cv-2692-PWG, 2020 WL 6263188 (D.Md. Oct. 23, 2020), to support the argument that, post COVID, depositions are taken remotely and "trial testimony may be offered 'by contemporaneous transmission from a different location.'" The quoted language is from Fed.R.Civ.P. 43.

Plaintiffs also contend that a physical inspection of the Hotel is unnecessary because the archway is no longer there, and videos and pictures, if they exist, would provide a better depiction. (*Id.* at 14). Additionally, Plaintiffs argue that Moving Defendants have not provided additional facts to support their argument that Super Sport was responsible for maintenance of the archway or warning Plaintiffs of any hazardous condition. (*Id.* at 14-15). Plaintiffs lastly argue that the main inquiry is convenience, and although they admit that Plaintiffs would be litigating in a foreign court either way, as Moving Defendants' headquarters, Maryland must be a more convenient forum for Moving Defendants. (*Id.* at 15-16).

Moving Defendants reply that travel should not weigh in favor of Plaintiffs, because Plaintiffs are residents of Brazil who are already willing to travel to the United States for litigation. (ECF No. 17, at 17). Plaintiffs have not expressed why they can travel to the United States, but they cannot travel to Egypt. (*Id.*). Additionally, Moving Defendants argue that if negligence is found, EGOTH and Super Sport are critical parties because EGOTH owned the Hotel and Super Sport "was responsible for constructing and maintaining the very archway alleged to have injured Plaintiffs.[1]" (*Id.* at 15-16). As evidence, Moving Defendants provided an excerpt of the contract between EGOTH, Luxury Hotels,

25

and Super Sport which states Super Sport "will carry out all installation work, maintenance work, all executive work and removal work for the Arab Stadium inside the hotel, starting from 11/15/2022 at its own expense and under its full responsibility during the event period."  (ECF Nos. 17, at 15-16; 17-2, at 2).

The private interest factors are as follows:

> (1) the ease of access to sources of proof; [(2)] the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view premises; [and] (5) the general facility and cost of trying the case in the selected forum[.]

*Tang*, 2010 WL 1375373, at *12 (quoting *Compania Naviera Joanna, SA*, 569 F.3d at 200).   Again, similar to *Tang*, the balance of private interest factors supports the finding that Egypt "is the more appropriate forum."  2010 WL 1375373, at *12.  The archway collapse and ensuing alleged injuries took place in Egypt, and there are many more Egyptian witnesses than United States witnesses.   Plaintiffs argue that "[t]he likely location of a majority of the documents Plaintiffs would need in discovery are located at the global headquarters" of Moving Defendants such as Moving Defendants' "policies and procedures, safety policies and procedures, its centralized training systems, Standard Operating Procedures, and inspection guidelines," and that the documents would need to be translated into Arabic.  (ECF No. 14-1, at 12).

Plaintiffs' complaint, however, does not allege that Moving Defendants were negligent in any of their policies, training, or other procedures, or that any decision made in Moving Defendants' Maryland headquarters contributed to Plaintiffs' injuries. Therefore, this argument is less compelling. Additionally, Plaintiffs have not pointed to any witnesses they would call in the United States, and Moving Defendants have named multiple witnesses and groups of people in Egypt that they may call as potential witnesses. (ECF No. 7-1, at 14-15). Therefore, on balance, this factor weighs in favor of litigating in Egypt.

"Moreover, the [Egyptian] forum would have the power to compel the testimony of unwilling witnesses and the cost of producing willing witnesses would be significantly reduced there. The present forum, by contrast, could not compel the testimony of [Egyptian] witnesses and would pose substantial expense and inconvenience." *Tang*, 2010 WL 1375373, at *12. Moving Defendants also assert their potential need to implead negligent Egyptian and other foreign third-party defendants, which they would not be able to do in this court. "While [Moving] Defendants could bring indemnification or contribution claims in [Egypt] if Plaintiffs were successful in the litigation here, proceeding in that manner would be unduly burdensome and inefficient." *Id.* at *12.

Therefore, the remaining private interest factors also weigh in favor of litigating in Egypt. [5]

### 3.  Public Interests

Moving Defendants argue that the public interest factors also support litigation in Egypt. (ECF No. 7-1, at 18). Moving Defendants state that there would likely be delays in obtaining evidence from Egypt, and Plaintiffs still have not served several of the Defendants. (*Id.*). Moving Defendants also argue that the lawsuit "would congest the already overwhelmed United States courts with a dispute that has *no* connection to the United States." (*Id.*). Additionally, Egypt has a stronger interest than Maryland

---

[5] Additionally, although neither party discusses the private and public interests as they relate to Non-moving Defendants, this analysis is not performed in a vacuum. *See Lans*, 786 F.Supp.2d at 293-98 (writing that even if the foreign forum was adequate, the private and public factors as they relate to both the moving and non-moving defendants weighed against dismissal); *Rudersdal, EEOD* 2020 WL 5836517, at *13 (finding that the private and public factors as they relate to all of the defendants support dismissing the case for *forum non conveniens*). Accordingly, for the same reasons that the private factors weigh in favor of litigating in Egypt for Moving Defendants, the private factors also weigh in favor of litigating in Egypt for Non-moving Defendants.

Moreover, because Non-moving Defendants are not United States citizens, the private interest factors weigh more strongly in favor of dismissing for *forum non conveniens*. Plaintiffs filed their complaint over nine months ago, and they have yet to serve Non-moving Defendants, who require service through the Hague Convention. (ECF No. 20, at 2). The court has granted Plaintiffs multiple extensions to do so. (ECF Nos. 11; 19; 21). This delay further demonstrates that "the general facility and cost of trying the case in" the United States supports dismissing the case for *forum non conveniens*. *Tang*, 2010 WL 1375373, at *12.

in hearing the dispute because the archway collapse happened in
Egypt, and it relates to tourism in the country. (*Id.*). Moving
Defendants also assert that the court would have to apply Egyptian
law, which would be an additional burden on the court. (*Id.* at
18-19). Lastly, Moving Defendants argue that because the alleged
negligence happened in Egypt, a Maryland jury would have little to
no connection to the case, posing an unnecessary burden. (*Id.*).

Plaintiffs argue that they would face administrative
difficulties in Egypt because of the inefficient and biased court
system. (ECF No. 14-1, at 16-17). Plaintiffs also argue that
"federal courts are well-equipped to adjudicate issues involving
foreign law." (*Id.* at 17). Additionally, Plaintiffs cite to
*DiFederico*, 714 F.3d at 807, to argue that there is a localized
interest in Maryland, and a Maryland jury is appropriate because
Moving Defendants are headquartered, operate hotels in, and
advertise in Maryland. (*Id.* at 18).

The public interest factors include "administrative
difficulties, the local interest of having localized controversies
decided at home, and the interest of trying cases where the
substantive law applies." *Tang*, 2010 WL 1375373, at *12 (quoting
*Compania Naviera Joanna, SA*, 569 F.3d at 200).

Although Plaintiffs suggest there are inefficiencies and
biases in the Egyptian courts, as Moving Defendants point out, the

reports Plaintiffs rely on are outdated or do not address an issue that would apply to a negligence case. Again, similar to *Tang*, the relevant public interest factors weigh in favor of dismissal. If the case was adjudicated in this court, the court would need to apply Egyptian law. *See Tang* 2010 WL 1375373, at *13 (first citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); then citing *Philip Morris Inc. v. Angeletti,* 358 Md. 689, 744 (2000)). "The *forum non conveniens* doctrine exists largely to avoid such comparative law problems." *Jiali Tang*, 656 F.3d at 253 (citing *Piper Aircraft,* 454 U.S. at 251). Because the archway collapse happened in Egypt, and there is "a local interest in having localized controversies decided at home," this factor also weighs in favor of litigating the case in Egypt.

While Plaintiffs cite to *DiFederico*, 714 F.3d at 807, to support their argument that there is an interest in having a case against Marriott International litigated in Maryland, as mentioned above, this case is distinguishable. In *DiFederico*, a United States citizen was killed, and the plaintiffs alleged that Marriott International failed to create proper security measures in its hotels. 714 F.3d at 806. In contrast, Plaintiffs are not United States citizens, and they have not alleged that their injuries stemmed from Moving Defendants' failure to create proper procedures. Moving Defendants have declared in a sworn affidavit

30

that "they do not manage, own, or operate the Hotel."  (ECF Nos. 17, at 19-20; 7-5, at 3; 7-6, at 3).  Accordingly, "Maryland has comparatively little interest in a case involving the extent of liability, if any, of an international holding company . . . for injuries inflicted abroad, and jury duty 'ought not to be imposed upon the people of a community which has no relation to the litigation.'"  *Tang*, 2010 WL 1375373, at *12 (quoting *Gulf Oil Corp.,* 330 U.S. at 509).[6]

## IV.  Conclusion

For the foregoing reasons, Moving Defendants' motion to dismiss for *forum non conveniens* will be granted.  A separate order will follow.

_____
         /s/
DEBORAH K. CHASANOW
United States District Judge

---

[6] As discussed above, it is worth noting that the public interest factors as they relate to Non-moving Defendants also weigh in favor of dismissing the case for *forum non conveniens*.  The administrative difficulties of litigating in Maryland are only compounded by the fact that Non-moving Defendants are not United States citizens.  Additionally, just as with Moving Defendants, the interest in avoiding applying Egyptian law and having localized controversies decided at home weigh in favor of litigating the case in Egypt.

31